```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| BALJINDER KUMAR, | No. 26-cv-00777(MEF) |
| *Petitioner,* | |
| v. | **ORDER** |
| LUIS SOTO et al., | |
| *Respondents.* | |

\* \* \*

For the purposes of this brief Order, the Court largely assumes familiarity with the facts and procedural history here.

\* \* \*

The Court entered an injunction, see Jan. 26, 2026 Text Order (ECF 3), the Respondents did not comply with it, see Feb. 2, 2026 Status Report (ECF 10), and the Petitioner sought a remedy. See Petitioner's Feb. 2, 2026 Letter (ECF 9).

"To evaluate the remedy that might be appropriate here," the Court directed that further information be provided --- and ordered a supervisory Assistant United States Attorney, via an affidavit, to enumerate "each instance in which the Respondents or people acting on their behalf violated an order issued by a judge of this district between December 5, 2025 and the present." Feb. 5, 2026 Text Order (ECF 14).

From there, "[a] senior Department of Justice official . . . stepped forward, and asked, herself, to provide the relevant sworn materials to the Court --- because[, she said,] the issues raised 'require [her] close attention.'" Feb. 9, 2026 Text Order (ECF 18) (quoting Request for Leave to Substitute Affiant (ECF 17) at 1).

The Court permitted the requested switch-up, see id., and the senior official's sworn filing came in. See Declaration of Jordan Fox (ECF 21-1).

It is as it should be. Careful, thorough, and plainly the product of a great deal of work by a great many professionals at the United States Attorney's Office --- lawyers and support teams.

The Court generally credits these materials, as it does another detailed declaration, see Declaration of John F. Basiak Jr. (ECF 19), that has been provided in this case.

                              *   *   *

The difficulty, though, is this: the sworn materials show that this case is not fully an outlier. Judicial orders have been violated by the Respondents in other recent cases.

Two examples make the point.

First, out of 547 post-December 5 reported matters, there were 17 occasions where the Court enjoined the Respondents from removing a person from the District, but he or she was removed. See Declaration of Jordan Fox ¶ 20. Per the senior Department of Justice official:

> Upon review of each post-injunction transfer, [the] Respondents have indicated that the transfer[] occurred inadvertently due to logistical delays in communicating the court order to the relevant custodians or to administrative oversight of the court order. In each case, [the] Respondents agreed to return the petition[er] to the District of New Jersey to regain compliance with the court order. Th[e] [United States Attorney's] Office has obtained no indication that [the] Respondents intentionally engaged in any of the above post-injunction transfers.

Id. ¶ 21.

Second, out of 547 reported matters, there were 12 occasions where the Court ordered immigration-court bond hearings by a

certain date, but those did not go forward on time --- they were one day late, or two. See id. ¶ 19.[1]

This falls below the relevant standards. Judicial orders should never be violated. And they very rarely are, especially not by federal officials. But in the first category noted just above, about 3% of judicial orders have been violated. In the second category around 2%.

\*   \*   \*

In continuing to reflect on the appropriate remedy here,[2] the Court is mainly focused on the systematic steps that federal officials are taking and will be taking on a going-forward basis to ensure meticulous compliance with judicial orders.

The United States Attorney's Office has recently taken "substantial" steps to ensure that, on its side of the ledger, orders are complied with. See Text Order, Moncada De La Hoz v. Noem, No. 26-01016 (D.N.J. Feb. 11, 2026) (ECF 10); see id. (describing these measures as "reflect[ing] an intensity of senior-level focus on a class of cases that plainly requires a real-time, hands-on approach"); see also Declaration of John F. Basiak Jr. ¶¶ 7, 15, Moncada De La Hoz v. Noem, No. 26-01016 (D.N.J. Feb. 9, 2026) (ECF 9) (laying out the various measures the United States Attorney's Office has taken).[3]

---

[1] And sometimes later. See Declaration of Jordan Fox ¶ 19 (noting one case where a petitioner "received [a] bond hearing seven days late").

[2] After the filing of the various sworn materials, the Petitioner has continued to seek a remedy in light of them. See Feb. 9, 2026 Letter (ECF 20); Feb. 16, 2026 Letter (ECF 22) at 1-3.

[3] The senior Department of Justice official alluded to above has said that "[w]e will continue to act with the utmost vigilance to prevent, self-report, and ensure compliance with court orders." Feb. 13, 2026 Letter (ECF 21) at 1. As she put it:

> [The United States Attorney's] Office takes adherence to court orders very seriously, and we communicate this principle to our agency-clients and law enforcement partners on a regular basis, including to [the] Respondents. Adherence to court orders is a bedrock

The above-referenced senior DoJ official has said "we believe that [the] Respondents' violations were . . . unintentional." Feb. 13, 2026 Letter (ECF 21) at 2; see also Declaration of Jordan Fox ¶¶ 21, 23, 27.  The Respondents' court order violations, it is implied, may be the product of high case volumes and the strain they are putting on the Respondents' internal processes and resources.  See Feb. 13 Letter at 1 (describing "this unprecedented period of immigration filings in one of the hardest hit districts in the country").

If this is an accurate diagnosis of the issue, it will be important for the Court to understand[4] the across-the-board administrative steps the Respondents are taking to ensure 100% compliance with judicial orders.[5]

\* \* \*

On or before February 25 at 10:00am, the Respondents shall file an affidavit, executed by a senior official, detailing the

---

> feature of our justice system; ensuring that adherence is a core responsibility of our Office.  Furthermore, time-sensitive matters implicating constitutional liberty interests are the highest priority of the Civil Division.  As such, immigration habeas petitions often receive the direct and personal involvement of supervisory AUSAs to resolve complex issues or concerns as quickly as possible.

Id. at 1.

[4]  As part of its determination of what the appropriate remedy might be here.

[5]  And all the more so because it is at least possible that there may be some ready fixes.  For example, it seems that all or virtually all district judges in this District are entering no-transfer injunctions after receiving habeas petitions that fall into the relevant class of cases.  So it may potentially make sense for the Respondents to commit to not transferring out of the District anyone who has filed a habeas petition until after the Court has had a chance to weigh in --- even before a no-transfer injunction is formally issued.  (The alternative is the current situation: waiting for the all-but inevitable no-transfer injunction, and then working to ensure the injunction is followed --- an approach that, as noted, is not always succeeding.)

4

procedures that are in place (or that will be put in place in the near-term) to ensure that court orders issued by district judges in New Jersey are timely and consistently complied with.

\*   \*   \*

It is on this 17th day of February, 2026 **SO ORDERED.**

_____
Michael E. Farbiarz, U.S.D.J.