## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BALJINDER KUMAR,

       *Petitioner*,

   v.

LUIS SOTO et al.,

       *Respondents*.

No. 26-cv-00777 (MEF)

**<u>OPINION</u>**

\*    \*    \*

For the purposes of this Opinion, the Court assumes some familiarity with the facts and procedural history of this case.

\*    \*    \*

Bajinder Kumar is in custody, held by federal immigration officials. <u>See</u> Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Habeas Petition") (ECF 1) ¶¶ 2-4; Feb. 16, 2026 Letter (ECF 22) at 1.

On January 25, he filed a habeas corpus petition. From here, he is called "the Petitioner."

The habeas petition named various people.[1] They are called "the Respondents."

The gist of the petition: federal statutes give certain detained noncitizens the right to a bail hearing before an immigration judge --- but the Petitioner has not gotten one. <u>See</u> Habeas

---

[1] Luis Soto, the warden of the Delaney Hall Detention Facility. Kristi Noem, the Secretary of the Department of Homeland Security. Todd Lyons, the Acting Director of Immigration and Customs Enforcement. And Pamela Bondi, the Attorney General of the United States.

Petition at 6.  Therefore, the argument goes, he is being held
in custody in violation of federal law.[2]

---

[2] Every judge in the District who has considered an argument
along these lines has agreed with it.  See Y.Z. v. Soto, 2025 WL
3564652, at *2 (D.N.J. Dec. 12, 2025).  But absent circumstances
not present here (res judicata, etc.), a district court's
decision in one case does not control the outcome in any other
case.  And so immigration officials have continued to go forward
under the law as they apparently see it --- holding noncitizens
without bail hearings, against the understanding of the law
uniformly held by the federal judges of this state.  The result
has been hundreds of habeas cases filed each month in New Jersey
--- each with an all-but foreordained result at the district-
court level.  The volume of these cases has badly overwhelmed
the United States Attorney's Office.  See Declaration of John F.
Basiak Jr. ¶ 6, Moncada De La Hoz v. Noem, No. 26-01016 (D.N.J.
Feb. 9, 2026) (ECF 9); see also Feb. 13, 2026 Letter (ECF 21) at
1.  But the DoJ has long had a way to try to quickly shut off
the spigot of incoming cases.  Namely, the DoJ can move the
Third Circuit for expedited consideration of the relevant issue.
(The DoJ sought such expedited review in the Fifth Circuit.  See
Buenrostro-Mendez v. Bondi, 166 F.4th 494, 501 (5th Cir. 2026).
But it does not seem to have done that here.)  If the Third
Circuit were to hold that the New Jersey district judges have it
wrong, then this class of cases will likely go away --- because
the district judges will not be able to offer the relief that
the habeas petitioners seek.  And if the Third Circuit were to
hold that the district judges have it right, then these cases
will likely also go away --- because within the geographical
confines of the Third Circuit, federal officials will presumably
abide by a Third Circuit opinion, and will not detain covered
noncitizens without giving them a bail hearing.  ("Presumably
abide by a Third Circuit opinion" because while the Solicitor
General has represented that federal officials will follow
Supreme Court opinions, see Trump v. CASA, Inc., 606 U.S. 831,
859 n.18 (2025); Transcript of Oral Argument at 63:16-19, Trump
v. CASA, Inc., 606 U.S. 831 (2025) (Nos. 24A884-86), there was
no similar representation as to following court of appeals
opinions within their circuits.  See Transcript of Oral Argument
at 33:18-20, 61:5-9, 61:18-25, CASA, 606 U.S. 831 (Nos. 24A884-
86).)

*   *   *

The morning after the habeas petition was filed, the Court entered an order "enjoin[ing] the Respondents and those acting for them from removing the Petitioner from this District or causing his removal." Jan. 26, 2026 Text Order (ECF 3).

*   *   *

The Court's injunction was violated.

Walk through what happened.

On February 2, the Petitioner's lawyer filed a letter saying that his client seemed to have been moved to Texas, despite the January 26 no-transfer injunction. See Petitioner's Feb. 2, 2026 Letter (ECF 9) at 1.

Later in the day, a letter came in from the United States Attorney's Office. Per the letter:

> This Office represents [the] Respondents . . . . We write to respectfully inform the Court that U.S. Immigration and Customs Enforcement ("ICE") transferred [the] Petitioner to the Port Isabel Service Detention Center in Los Fresnos, Texas on January 31, 2026, after the Court issued an order on January 26, 2026, prohibiting [the] Petitioner's transfer from the District of New Jersey.
>
> . . . . Our Office first received notice of [the] Petitioner's transfer [out of New Jersey] today, February 2, 2026, at 4:49 p.m., via [the] Petitioner's letter filed on the docket. We contacted ICE at 4:59 p.m. to request confirmation of [the] Petitioner's transfer, and reiterated that [the] Petitioner was not to be removed from this District. ICE confirmed at 5:07 p.m. that it transferred [the] Petitioner to Port Isabel on January 31, 2026, but that it is facilitating [the] Petitioner's return to New Jersey.

Feb. 2, 2026 Status Report on Petitioner's Detention Location ("Feb. 2, 2026 Status Report") (ECF 10) at 1 (cleaned up).

A February 3 letter from the United States Attorney's Office gave an update: "U.S. Immigration and Customs Enforcement has informed our Office that [the] Petitioner is scheduled to be transferred back to New Jersey by airplane on February 5, 2026."

3

Feb. 3, 2026 Status Report on Petitioner's Detention Location ("Feb. 3, 2026 Status Report") (ECF 11).

And on that date, February 5, the United States Attorney's Office wrote again, to say that the Petitioner had been returned to New Jersey.  See Feb. 5, 2026 Follow-On Status Report on Petitioner's Detention Location (ECF 12).

*     *     *

On the day the Petitioner was returned, February 5,[3] the Court issued an order.

---

[3]  The Court learned that its order had been violated on February 2.  But it did not act until February 5.  The reason for the pause: the Court needed to confirm it had jurisdiction.  Why the question mark?  Because in mid-January, the Third Circuit held in Khalil v. President, 164 F.4th 259 (3d Cir. 2026), that there was no district-court jurisdiction over a particular noncitizen's habeas case.  See id. at 273.  That suggested the possibility that there is no district-court jurisdiction over a broad range of noncitizen habeas cases, including ones like this one.  So on the day after the Khalil decision, the Court directed the Respondents to brief the jurisdictional issue.  See Aygun v. Soto, 2026 WL 136151, at *1 (D.N.J. Jan. 16, 2026).  The Respondents asked for an adjournment.  See Respondents' Jan. 21, 2026 Letter at 1, Aygun v. Soto, No. 25-18540 (D.N.J.) (ECF 14).  A large fraction of the state's district judges had requested briefing, they explained.  See id.  And per the Respondents, the jurisdictional question was a "complex" one.  See id.  (Indeed, the DoJ has taken different positions before different courts as to whether Khalil prevents the exercise of district-court jurisdiction in cases like this one.  See Aygun v. Soto, 2026 WL 323633, at *2 n.5 (D.N.J. Feb. 5, 2026).)  The Respondents' adjournment request raised "difficult issues," Jan. 22, 2026 Text Order, Aygun v. Soto, No. 25-18540 (D.N.J.) (ECF 15), but the Court granted it.  See id.; Jan. 22, 2026 Text Order, Aygun v. Soto, No. 25-18540 (D.N.J.) (ECF 17).  Briefing on the post-Khalil jurisdictional question became fully submitted on February 2, and on February 5 the Court issued an Opinion and Order holding that it had jurisdiction --- even after Khalil.  See Aygun, 2026 WL 323633, at *4.  A few hours later, the Court entered an order in this case, directing the Respondents to explain why the January 26 no-transfer injunction had been violated.  See Feb. 5, 2026 Text Order (ECF 14).  (If

> The Respondents have violated a judicial order.  In
> connection with the violation, the Petitioner has sought a
> remedy.  To evaluate the remedy that might be appropriate
> here, the Court will require further information.

Feb. 5, 2026 Text Order (ECF 14) (cleaned up).

The order then described the "further information" that would be
needed.  See id.

The last of the requested information has now come in, and this
matter became fully submitted two business days before today.
See Supplemental Declaration of Jordan Fox (ECF 28);
Petitioner's Feb. 26, 2026 Letter (ECF 29).

So the Court writes here as to the way forward.

*    *    *

Start with the law.

For violating a court order, as happened here, a person (or an
institution) can be held in contempt.[4]  The penalties associated

---

the Court had determined that, in retrospect, it did not have
jurisdiction when it entered its January 26 no-transfer
injunction --- that might have raised distinct issues.  Because
while "the invalidity of a court order generally is not a
defense in a criminal contempt proceeding alleging disobedience
of the order," Pennsylvania v. Loc. Union 542, Int'l Union of
Operating Eng'rs, 552 F.2d 498, 505-06 (3d Cir. 1977), some
authority seems to run the other way.  See Ex parte Fisk, 113
U.S. 713, 718 (1885); see also J.G.G. v. Trump, 147 F.4th 1044,
1062 (D.C. Cir. 2025) (Katsas, J., concurring) (collecting
cases).  These issues do not need reaching here, because the
Court has concluded that it did have jurisdiction when it issued
the January 26 injunction.)

[4] See Richardson v. McChesney, 218 U.S. 487, 493 (1910) ("If he
disobey the . . . injunction of the court he personally would be
in contempt."); Taggart v. Lorenzen, 587 U.S. 554, 560 (2019)
(explaining that contempt sanctions have "long" been an option
in the face of "noncompliance with an injunction"); see also Ex
parte Robinson, 86 U.S. (19 Wall.) 505, 510 (1873) ("[t]he power
to punish for contempts . . . is essential to the . . .
enforcement of the . . . orders . . . of the courts").

with contempt can be severe.  Fines, for example, or imprisonment.[5]

Those are the everyday rules of the road.  And they apply when our federal government is involved.

A federal official can be held in contempt.  See, e.g., Land v. Dollar, 190 F.2d 623, 633-34, 640, 648 (D.C. Cir. 1951), vacated as moot sub nom., In re Killion, 344 U.S. 806 (1952); In re Irving, 600 F.2d 1027, 1030, 1037 (2d Cir. 1979).

So can a federal agency.  See In re Fannie Mae Sec. Litig., 552 F.3d 814, 818, 821-24 (D.C. Cir. 2009); Am. Rivers v. U.S. Army Corps of Eng'rs, 274 F. Supp. 2d 62, 70 (D.D.C. 2003).

And if federal officials or a federal agency are held in contempt, the full range of contempt sanctions is available. See, e.g., Land, 190 F.2d at 648 ("commitment . . . in civil contempt"); Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv., 530 F. Supp. 2d 1126, 1136 (D. Mont. 2008) (weighing the possibility of "[i]ncarcerating [the] Undersecretary of Agriculture . . . in a correctional facility" or placing him "under house arrest subject to electronic monitoring"); Am. Rivers, 274 F. Supp. 2d at 70 ("a fine of $500,000 for every day of non-compliance").

*      *      *

There are two types of contempt proceedings.

The first is civil.  It is forward-looking.  Its basic purpose is to get someone to do what the court ordered them to do.  See Taggart v. Lorenzen, 587 U.S. 554, 560 (2019); Turner v. Rodgers, 564 U.S. 431, 441 (2011); McCrone v. United States, 307 U.S. 61, 64 (1939); Lamb v. Cramer, 285 U.S. 217, 220-21 (1932); Bessette v. W.B. Conkey Co., 194 U.S. 324, 327-29 (1904).

Think of a witness who is ordered to testify but says no --- and is then fined every day until he sits for his deposition.

Civil contempt is not in play here.

---

[5] See Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 441-42 (1911); Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 444 (1974); Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 826-28 (1994); see also 18 U.S.C. § 401.

The Court's January 26 no-transfer injunction was violated when the Petitioner was moved from New Jersey to Texas.  But he is back now.  There is no need for the Court to compel the Respondents to return the Petitioner to New Jersey.  They have already done that.

                    *    *    *

The other type of contempt is criminal.

It is mainly backward-looking --- an effort to address, and if necessary to punish, a past violation of a court order.  Criminal contempt zeroes in on a <u>completed</u> violation of a judicial order.  A violation that has already happened, that is finished.[6]

This is the sort of contempt that is potentially on the table here.

The Court's January 26 no-transfer injunction was violated.  The violation is now over, as the Petitioner is back in New Jersey.  But the violation still happened, and the question here is how to go forward in light of it.[7]

---

[6]  See <u>United States</u> v. <u>Kouri-Perez</u>, 187 F.3d 1, 6 n.2 (1st Cir. 1999) ("criminal contempt proceedings address a completed crime"); <u>see also</u> <u>Lee</u> v. <u>Johnson</u>, 799 F.2d 31, 37 (3d Cir. 1986) (criminal contempt "punish[es] a contemnor for past defiance of the process of a court"); <u>In re Eskay</u>, 122 F.2d 819, 823 (3d Cir. 1941) ("[c]riminal contempt punishes the past act").  That a time-one violation is completed does not mean that it spins off no continued (and injurious) time-two consequences.  It might.  And those sorts of knock-on consequences could potentially be the basis for, say, a tort suit by the injured party.  But the main focus of a criminal contempt inquiry is not on remedies to injured people.  Rather, it is on preserving the court's authority by ensuring there are consequences for flaunting it.  See <u>Hicks ex rel. Feiock</u> v. <u>Feiock</u>, 485 U.S. 624, 631 (1988); <u>Loc. 28 of Sheet Metal Workers' Int'l Ass'n</u> v. <u>Equal Emp. Opportunity Comm'n</u>, 478 U.S. 421, 443 (1986); <u>Bessette</u>, 194 U.S. at 328; <u>see also</u> <u>In re Fox</u>, 96 F.2d 23, 25 (3d Cir. 1938) ("[p]unishment in criminal contempt cannot undo or remedy the thing which has been done").

[7]  Federal Rule of Criminal Procedure 42(a) sets out the procedure to be followed in the criminal contempt context.  One

Before getting to that, a last legal point.

In the Third Circuit, criminal contempt can go forward based only on a "willful" violation.  See Waste Conversion, Inc. v. Rollins Env't Servs. (NJ), Inc., 893 F.2d 605, 609 (3d Cir. 1990); see also United States v. Morton, 993 F.3d 198, 207 (3d Cir. 2021); In re Kendall, 712 F.3d 814, 830-31 (3d Cir. 2013); Taberer v. Armstrong World Indus., Inc., 954 F.2d 888, 908 (3d Cir. 1992).

And a mistake cannot generally be willful.  See Emokah v. Mukasey, 523 F.3d 110, 116-17 (2d Cir. 2008); United States v. Evans, 74 F.4th 597, 607 (4th Cir. 2023); United States v. Morales, 108 F.3d 1031, 1037 (9th Cir. 1997).

                    *     *     *

Did the Respondents breach the Court's January 26 no-transfer injunction in a "willful" way?

Move now to that question.

                    *     *     *

The Respondents contend the injunction was violated "inadvertently."  Declaration of John F. Basiak Jr. (ECF 19) ¶ 13.

The basis for this contention:

-----

thing the Rule requires is notice --- a heads-up to the accused contemnor so that he or she can put together a defense.  Some district courts have held that Rule 42(a) notice should issue only following a judicial determination that the facts, as the court finds them, add up to probable cause to think that a judicial order has been violated.  See In re Res. Tech. Corp., 2008 WL 5411771, at *4 (N.D. Ill. Dec. 23, 2008); see also United States v. Hovind, 2014 WL 12887669, at *2 (N.D. Fla. July 8, 2014); In re United Corp., 166 F. Supp. 343, 345 (D. Del. 1958); 5 Orfield's Criminal Procedure Under the Federal Rules § 42:23 (2025).  This approach makes sense.  Criminal defendants are generally entitled to a probable cause determination, by a judge or by a grand jury.  Defendants in a possible criminal contempt case should get the same protection.

A supervisory Assistant United States Attorney[8] was directed by the Court (i) to personally investigate what happened here and (ii) to describe the results of his investigation. See Feb. 5, 2026 Text Order (ECF 14).

In response to this, the referenced Assistant United States Attorney has sworn to this timeline:

- The Court issued its no-transfer injunction at 7:58am on January 26. See Declaration of John F. Basiak Jr. ¶ 4.
- Around 24 minutes later, the United States Attorney's Office "notified ICE via e-mail of the Court's injunction." Id. ¶ 5.
- And at 9:21am, "ICE's legal office notified ICE's Enforcement and Removal Operations . . . in Newark . . . that the 'Court has enjoined ICE from transferring or removing the alien during the pendency of his petition: Kumar, Baljinder[.]'" Id. ¶ 12.

But per the Assistant United States Attorney, the directive from ICE legal personnel to ICE operations personnel got lost in the shuffle.

"Unfortunately and inadvertently," the Assistant United States Attorney declared under oath, "[ICE's Enforcement and Removal Operations] Newark missed the January 26 e-mail informing them of the Court's injunction[.]" Id. ¶ 13.

And so the Petitioner was sent to Texas. See Feb. 2, 2026 Status Report at 1.

                              *    *    *

Is all of this right? As a factual matter, was the violation of the Court's January 26 no-transfer injunction actually inadvertent?[9]

                              *    *    *

---

[8]  John F. Basiak Jr.

[9]  These questions need answering because, as noted, this is a criminal contempt context. And no one can be accused of criminal contempt except following a probable cause determination by the Court. See footnote 7. In turn, a judicial probable cause determination necessarily rests on the Court's preliminary finding as to what the facts are. See id.

The case for "yes" rests on four pillars.

First, the referenced Assistant United States Attorney is the Chief of the Civil Division.  See Declaration of John F. Basiak Jr. ¶ 1.  The Court directed him to personally conduct the investigation in part because, based on his work in other cases, he is known to the undersigned to be a professional of high integrity.  His integrity, and his professionalism --- these are reasons to rely on his work.

Second, upon learning of the Petitioner's removal to Texas, the Respondents all-but "immediately" worked to return him to New Jersey.  See id. ¶ 8.  This is reflected, for example, in contemporaneous letters filed with the Court.  See Feb. 2, 2026 Status Report; Feb. 3, 2026 Status Report.  Efforts to quickly get the Petitioner back to New Jersey support the conclusion that he was inadvertently removed in the first place.

Third, in connection with these proceedings, the Chief of Staff to the Deputy Attorney General,[10] now the leader of the United States Attorney's Office's Civil Division,[11] opted to file various materials.[12]

She has said: "[o]ur Office takes adherence to court orders very seriously, and we communicate this principle to our agency-clients and law enforcement partners on a regular basis, including to [the] Respondents."  Feb. 13, 2026 Letter (ECF 21) at 1.

And this: "Adherence to court orders is a bedrock feature of our justice system; ensuring that adherence is a core responsibility

---

[10]  Declaration of Jordan Fox (ECF 21-1) ¶ 1.

[11]  See Press Release, Off. of Pub. Affs., U.S. Dep't of Just., Department of Justice Leadership Announces New Personnel Appointments and Authorizations in the District of New Jersey (Dec. 8, 2025), https://www.justice.gov/opa/pr/department-justice-leadership-announces-new-personnel-appointments-and-authorizations (last accessed Mar. 2, 2026); see also Declaration of Jordan Fox ¶ 1.

[12]  "Opted" because she was not directed by the Court to participate in this case.  Rather, she asked to file an affidavit, because this matter "require[s her] close attention."  Feb. 7, 2026 Letter (ECF 17) at 1.

of our Office."  <u>Id</u>.  And: "[t]he line AUSAs and staff of the
Civil Division, their supervisors, the Front Office, and I will
all continue to ensure full compliance with court orders."  <u>Id</u>.
at 2.

An agency might ignore a "core" "bedrock" "principle" that is
"regular[ly]" "communicate[d]" to it by the seniormost on-scene
DoJ official --- and choose, instead, to violate court orders.

This can unfortunately happen.

But the fact that an agency is apparently receiving strong,
unhedged advice to follow judicial orders makes it more likely
that the agency is aiming to do just that --- and that a failure
to comply is therefore inadvertent.

<u>Fourth</u> and finally, the Court directed that another
investigation be conducted in this case.

This investigation, the Court ordered, was to culminate in the
filing of an affidavit "enumerat[ing] each instance in which the
Respondents or people acting on their behalf violated an order
issued by a judge of this district" from December 5, 2025
onward.  Feb. 5, 2026 Text Order (ECF 14).

The United States Attorney's Office investigated.  <u>See</u>
Declaration of Jordan Fox (ECF 21-1) ¶¶ 11-16.  The
investigation involved 24 Assistant United States Attorneys and
support staff.  <u>See</u> Feb. 13, 2026 Letter at 1-2; Declaration of
Jordan Fox ¶ 16.

The investigation uncovered a large number of violations of no-
transfer injunctions.  <u>See</u> Declaration of Jordan Fox ¶ 20
(identifying 17).  As to these violations, the investigative
conclusion was this:

> Upon review of each post-injunction transfer, [the]
> Respondents have indicated that the transfer[] occurred
> inadvertently due to logistical delays in communicating the
> court order to the relevant custodians or to administrative
> oversight of the court order.  In each case, [the]
> Respondents agreed to return the [P]etition[er] to the
> District of New Jersey to regain compliance with the court
> order.  <u>Th[e] [United States Attorney's Office] has
> obtained no indication that [the] Respondents intentionally
> engaged in any of the above post-injunction transfers</u>.

<u>Id</u>. ¶ 21 (emphasis added).

11

This "no indication" finding suggests that there has not been an overarching plan to intentionally violate no-transfer injunctions.  And that supports the conclusion that the January 26 no-transfer injunction was violated inadvertently, not on purpose.

*    *    *

The evidence set out above certainly starts the needle moving in the direction of a factual finding that the Respondents' violation of the January 26 no-transfer injunction was a mistake, a matter of inadvertence.[13]

If at the end of the road the Court were to ultimately <u>make</u> such a factual finding --- what would be the legal implication of it?

The answer, it is implied by the Respondents, would be that no one here has acted with contempt.  Because contempt requires willfulness, not inadvertence.

But even assuming[14] that the factual premise (of inadvertence) is right, the asserted legal implication (no criminal contempt) may not follow from it.

To see why, step back for a moment.

*    *    *

The investigation conducted here by the United States Attorney's Office shows that no-transfer injunctions issued by New Jersey district judges have been recently violated 17 times by the Respondents.  <u>See</u> Declaration of Jordan Fox ¶ 20.  This means that no-transfer orders are being violated at a rate of around three every two weeks.

An email might not be forwarded here or there.  Work pressures build and it can be hard to dig out.  Mistakes can be made.

But when the same mistakes happen over and over again --- the picture can start to look different.  What looks like inadvertence (when it happens once) might begin to inch closer to looking intentional (when it happens more than once a week).

---

[13]  But note: the Court does not today make any bottom-line factual finding as to this, one way or another.

[14]  Just for present purposes.  <u>See</u> footnote 13.

12

"Adherence to court orders is a bedrock feature of our justice system." Feb. 13, 2026 Letter at 1. That gets it right.

And that is part of why federal officials generally approach judicial orders directed at them with extraordinary care, focus, and attentiveness.

But this habitual meticulousness is a cause for some skepticism here.

It makes it hard to accept that federal officials have suddenly become casual, even sloppy. Loose with court orders, to the point that no-transfer injunctions have inadvertently been violated on an over-and-over-again basis --- and that the Court's January 26 injunction was inadvertently violated, too.

Against this backdrop, the Respondents suggest that there is an explanation for the recurring "inadvertent" violations.

Namely, there has been an "unprecedented period of immigration filings in one of the hardest hit districts in the country." Feb. 13, 2026 Letter at 1; accord Declaration of John F. Basiak Jr. ¶ 6, Moncada De La Hoz v. Noem, No. 26-01016 (D.N.J. Feb. 9, 2026) (ECF 9).

And a mismatch between (i) processes and resources built for a certain number of cases and (ii) a system now addressing many more cases --- that can generate real strains. The system can buckle. And when it does, the Respondents seem to suggest, inadvertent errors can be made --- even as to the critically important matter of carefully following judicial orders.

In short, the Respondents imply, the January 26 no-transfer order was violated inadvertently --- but there is an explanation. On-the-ground personnel are making mistakes because they are overwhelmed by work volume. Serious mistakes, but inadvertent ones.

And the presumed legal implication of all this:

Because there is inadvertence, there can be no willfulness. The two are opposites. And because there is no willfulness, there can be no criminal contempt --- because criminal contempt requires a showing of willfulness. See Waste Conversion, 893 F.2d at 609.

*    *    *

13

But does this follow?  Maybe not.  As to why, come back to the law.

"Willful blindness" is "[d]eliberate avoidance of knowledge . . . by failing to make a reasonable inquiry."  <u>Willful Blindness</u>, <u>Black's Law Dictionary</u> (12th ed. 2024).

In many areas of our law, a "willful" element can be established by a showing of willful blindness.  <u>See Global-Tech Appliances, Inc.</u> v. <u>SEB S.A.</u>, 563 U.S. 754, 766 (2011) (criminal law); <u>see also Unicolors, Inc.</u> v. <u>H&M Hennes & Mauritz, L.P.</u>, 595 U.S. 178, 187-88 (2022) (copyright law); <u>Intel Corp. Inv. Pol'y Comm.</u> v. <u>Sulyma</u>, 589 U.S. 178, 180, 190 (2020) (ERISA law); <u>Bullock</u> v. <u>BankChampain, N.A.</u>, 569 U.S. 267, 269, 273-74 (2013) (under the bankruptcy code).

And some cases suggest that willful blindness, if proven, can establish willfulness for criminal contempt purposes.  <u>See</u>, <u>e.g.</u>, <u>Commodores Ent. Corp.</u> v. <u>McClary</u>, 2025 WL 2754134, at *4 (11th Cir. Sept. 29, 2025); <u>Suntrust Mortg., Inc.</u> v. <u>AIG Untied Guar. Corp.</u>, 2011 WL 1225989, at *21 (E.D. Va. Mar. 29, 2011); <u>Hutchison</u> v. <u>State</u>, 27 P.3d 774, 780 (Alaska Ct. App. 2001) (state law); <u>cf.</u> <u>Acevedo-Garcia</u> v. <u>Vera-Monroig</u>, 368 F.3d 49, 58-59 (1st Cir. 2004); <u>Eros Ent., Inc.</u> v. <u>Melody Spot, L.L.C.</u>, 2005 WL 4655385, at *8 (E.D.N.Y. Oct. 11, 2005); <u>BASF Argo B.V.</u> v. <u>Makhteshim Agan of N. Am., Inc.</u>, 2018 WL 11424797, at *7-8 (M.D.N.C. Aug. 31, 2018).[15]

On the facts here, possible willful blindness might well be a meaningful part of the analysis.

As the United States Attorney's Office investigation shows, there have been widespread and recent violations of locally-issued no-transfer orders.

And that raises a hard-to-miss question: if local ICE leaders at some point developed a rough sense that this may have been going on, but did not then meaningfully tackle the problem --- could that suggest that <u>later</u> violations of judicial orders (like the violation of the January 26 no-transfer order) were a product of their willful blindness?  And if so, could the violation of the

---

[15] For a case that is further afield, but still relevant to an extent, see <u>Williamson</u> v. <u>Recovery Ltd. P'ship</u>, 826 F.3d 297, 304 (6th Cir. 2016).

January 26 no-transfer order count as willful --- and therefore a possible basis for criminal contempt?[16]

The information put before the Court until now does not speak to the questions set out in the preceding paragraph.

There is no evidence, say, about what local ICE supervisors were aware of.  Or the steps they may have taken to tighten up on the reins as problems developed, as they plainly did.

*     *     *

In light of this gap in the evidence, how to move things forward?

One possibility is simply to close the gap.  To gather relevant documents, like contemporaneous emails.  To hold a live-witness factual hearing.  And then to finish out the fact finding, and to definitively determine whether there is probable cause to believe there was criminal contempt here.[17]

The question is a close one.  But the Court will not go down that road.  The next section explains why.

*     *     *

A court's exercise of its contempt authority "must be restrained by the principle that only the least possible power adequate to the end proposed should be used in contempt cases." Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 801 (1987) (cleaned up); accord, e.g., Anderson v. Dunn (6 Wheat.), 19 U.S. 204, 230-31 (1821).

The "least possible power" rule is mandatory.  Young, 481 U.S. at 801 (cleaned up).  It "must" be applied.  Id.

And it means that considering possible contempt should be "a last resort," to be pursued "only after all other means to achieve the ends legitimately sought by the court have been exhausted."  In re Att'y Gen., 596 F.2d 58, 65 (2d Cir. 1979);

---

[16]  "[T]he analysis of intent properly encompasses the contemnor's behavior in related incidents[.]"  In re Holloway, 995 F.2d 1080, 1082 (D.C. Cir. 1993); see also Wright v. Nichols, 80 F.3d 1248, 1252 (8th Cir. 1996) (same); cf. United States v. Lumumba, 794 F.2d 806, 811 (2d Cir. 1986).

[17]  See generally footnote 7.

accord <u>Gascho</u> v. <u>Glob. Fitness Holdings, LLC</u>, 875 F.3d 795, 799 (6th Cir. 2017) ("Contempt is a measure of last resort, not first resort."); <u>United States</u> v. <u>Brown</u>, 791 F.2d 577, 578 (7th Cir. 1986) ("[t]he Supreme Court has counseled judges to use criminal contempt only as a last resort").

The "ends legitimately sought" here, <u>In re Att'y Gen.</u>, 596 F.2d at 65, are mainly about the future.

The Court handles a large volume of immigration-habeas cases, and in those cases frequently issues no-transfer injunctions,[18] plus any number of other injunctions.[19]

The Court must ensure that the Respondents comply with future injunctions in habeas cases. That is basic to the rule of law. It is a "legitimate" goal.

One way to accomplish that goal is to punish past violations, if such punishment is warranted.[20]

---

[18] The undersigned alone has issued more than 20 no-transfer injunctions since the beginning of this year. Some examples: Jan. 7, 2026 Text Order, <u>Torres Villamil</u> v. <u>Tsoukaris</u>, No. 26-00088 (D.N.J.) (ECF 2); Jan. 9, 2026 Text Order, <u>Torres</u> v. <u>Francis</u>, No. 25-18102 (D.N.J.) (ECF 22); Jan. 12, 2026 Text Order, <u>Sanchez Guzman</u> v. <u>Florentino</u>, No. 26-0197 (D.N.J.) (ECF 2); Feb. 10, 2026 Text Order, <u>Vasquez Martinez</u> v. <u>Bondi</u>, No. 26-01309 (D.N.J.) (ECF 2); Feb. 12, 2026 Text Order, <u>Fonseca Rivas</u> v. <u>Soto</u>, No. 26-01388 (D.N.J.) (ECF 4); Feb. 18, 2026 Text Order, <u>Guerrero Jimenez</u> v. <u>Soto</u>, No. 26-01548 (D.N.J.) (ECF 2).

[19] Since the beginning of the year, the undersigned has issued more than 20 orders directing federal officials to grant a noncitizen a bond hearing. See, for example, Jan. 5, 2026 Text Order, <u>Rivas Milla</u> v. <u>Soto</u>, No. 26-00022 (D.N.J.) (ECF 2); Jan. 7, 2026 Text Order, <u>Torres Villamil</u>, No. 26-00088 (ECF 2); Jan. 12, 2026 Text Order, <u>Sanchez Guzman</u>, No. 26-0197 (ECF 2); Feb. 12, 2026 Text Order, <u>Fonseca Rivas</u>, No. 26-01388 (ECF 4); Feb. 10, 2026 Text Order, <u>Vasquez Martinez</u>, No. 26-01309 (ECF 2); Feb. 18, 2026 Text Order, <u>Guerrero Jimenez</u>, No. 26-01548 (ECF 2).

[20] See <u>Ex parte Grossman</u>, 267 U.S. 87, 111 (1925) ("For criminal contempts the sentence is punitive in the public interest to vindicate the authority of the Court and to deter other like derelictions."); <u>McCrone</u>, 307 U.S. at 64 ("criminal contempt[] .

But going that route is not permitted if there is "[an]other means to achieve" the goal, a means that "ha[s] [not yet] been exhausted." In re Att'y Gen., 596 F.2d at 65.

And here, there still may be.  The next section lays it out.

                    *     *     *

Going forward, in all of its immigration-habeas cases, the undersigned's no-transfer injunctions will include an order that two declarations must be promptly executed under penalty of perjury and publicly filed on the Court's docket.

First, a declaration from the United States Attorney's Office indicating that it has (i) received the injunction in question and conveyed it to the appropriate personnel at ICE; and (ii) provided ICE with written legal advice on the subject of ICE's obligation to comply with that particular injunction.

And second, a declaration from ICE confirming that it has (i) received the particular injunction in question; and (ii) received written legal advice from the United States Attorney's Office on the subject of its obligation to comply with the injunction.[21]

---

. . is . . . intended as a deterrent to offenses against the public"); see also United States v. Dowell, 257 F.3d 694, 699 (7th Cir. 2001); see also United States v. Barnett, 376 U.S. 681, 756 (1964) (Goldberg, J., dissenting).  This is the logic of specific deterrence.  Punishment imposed today to convince the person or entity being punished not to violate the law again in the future.

[21]  The substance of the referenced legal advice would almost surely be shielded by the attorney-client privilege.  But not the fact that advice has been provided in a certain subject area.  See, e.g., United States v. O'Malley, 786 F.2d 786, 794 (7th Cir. 1986); United States v. White, 887 F.2d 267, 271 (D.C. Cir. 1989).  (And note here that the leader of the Civil Division has already described some of the substance of the advice the DoJ gives in this area to its client agencies.  See Feb. 13, 2026 Letter at 1.)

The first declaration will be executed by the leader of the Civil Division,[22] or by the Chief of the Civil Division.[23]

The second declaration will be executed by the Newark ICE Field Office Director or by the Newark ICE Field Office Deputy Director.

Ordinary workplace processes are not getting the job done. Officials are said to be losing track of judicial injunctions in the course of the day's work.  See Declaration of John F. Basiak Jr. ¶ 13.  Routine database entries are not being made.  See id. ¶¶ 12-13.

One way to short-circuit all of this is to go to the top of the relevant organizations, right from the start of a newly-filed case.

And direct personal accountability is part of what is implied by signing a declaration.  That can have a real-world impact on compliance, too.

*    *    *

Requiring declarations is intrusive.

But it is a narrowly-tailored[24] way to address the precise problem before the Court --- of ensuring going-forward compliance with judicial no-transfer orders.

And it is less intrusive than an alternative way to achieve that goal --- further steps down the road toward a possible criminal contempt proceeding.  See In re Att'y Gen., 596 F.2d at 65 (contempt should be "a last resort," pursued "only after all other means . . . have been exhausted").

*    *    *

---

[22]  Jordan Fox.

[23]  John F. Basiak Jr.

[24]  Injunctions must be narrowly tailored.  See, e.g., E. Bay Sanctuary Covenant v. Barr, 934 F.2d 1026, 1029 (9th Cir. 2019); ClearOne Commc'ns, Inc. v. Bowers, 643 F.3d 735, 752 (10th Cir. 2011).

Moreover, the equities[25] favor imposing the declarations requirement.

First, because of the evidence of persistent and recent violation of court orders --- and the evidence as to compliance failures from both ICE[26] and the United States Attorney's Office.[27]

And second, for a reason particular to ICE.  Take that up now.

Against the backdrop of extensive violations of judicial orders, the Court ordered the Respondents to "file an affidavit, executed by a senior official, detailing the procedures that are in place (or that will be put in place in the near-term) to ensure that court orders issued by district judges in New Jersey are timely and consistently complied with."  Kumar v. Soto, 2026 WL 457398, at *3 (D.N.J. Feb. 17, 2026).

In response, the United States Attorney's Office described the measures it has recently taken to improve compliance.  See Supplemental Declaration of Jordan Fox ¶¶ 5, 8.[28]

Speaking for itself, the United States Attorney's Office has also made clear that it takes violations of Court orders seriously.  "[W]e regret deeply all violations for which our Office is responsible."  Feb. 13, 2026 Letter at 2.

---

[25]  Injunctions must generally issue based on a balancing of the equities.  See Reilly v. City of Harrisburg, 858 F.3d 173, 177-78 (3d Cir. 2017) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)).

[26]  See, e.g., Declaration of John F. Basiak Jr. ¶ 13; Declaration of Jordan Fox ¶¶ 20, 22-25.

[27]  See, e.g., Declaration of Jordan Fox ¶¶ 18, 20.

[28]  In a nutshell, the United States Attorney's Office has surged resources and remade the way it does business.  See Declaration of John F. Basiak Jr. ¶ 7, Moncada De La Hoz, No. 26-01016 (ECF 9); Supplemental Declaration of Jordan Fox ¶¶ 5, 8.  Its approach is thoughtful and substantial.  Whether or not it is enough, time will tell.  But the United States Attorney's Office has taken real steps in the right direction.

Here, though, the main problem is on ICE's side of the line.[29]

And in response to the Court's order as to going-forward compliance measures, nothing came back from ICE. Nothing about how it might improve its internal processes. Or its training. Or its supervision. Or how it might bring more resources to bear. Nothing as to the possible "ready fix[]" identified by the Court. See Kumar, 2026 WL 457398, at *2 n.5. No commitment to do anything at all. And no statement of "regret."

In the face of scores of violations of recent judicial orders, this silence, the Court fears, is clarifying as to the overall approach of local ICE leaders to following the Court's orders.

That sheds important light on the equities here.[30]

And ICE's silence leaves the Court without the benefit of constructive input --- and with no choice but to craft its own mechanism for getting compliance with its no-transfer orders. The declarations requirement is that mechanism.

*    *    *

There can be no guarantee that the declarations requirement will ensure that, going forward, the Court's no-transfer injunctions will be followed.

But our law requires interim steps. Possible contempt is "a last resort," potentially on the table only "after all other means . . . have been exhausted." In re Att'y Gen., 596 F.2d at

---

[29] In this case, for example, the evidence is that United Sates Attorney's Office passed along the no-transfer injunction, but ICE did not act on it. See Declaration of John F. Basiak Jr. ¶¶ 5-6, 13. Instead, it moved the Petitioner out of New Jersey. See id. ¶ 7.

[30] There is not very much on the other side of the ledger, in terms of the balance of the equities. For example, the need to file declarations will not displace a great deal of agency leaders' time. And the United States Attorney's Office, for its part, is already giving cases in this area senior-level focus. See Declaration of John F. Basiak Jr. ¶ 7(k), Moncada De La Hoz, No. 26-01016 (ECF 9); Supplemental Declaration of Jordan Fox ¶ 5(i). So for that Office, the declarations requirement may not prove all that onerous.

65.    A declarations requirement is a plausible-enough "means."
So it must be tried.

But if future no-transfer injunctions are violated even with the
declarations requirement on the books --- then things will have
moved, at that point, to a different place.

As this case has unfolded, a great deal of evidence has been
pulled together.   It suggests that local ICE leaders must square
up to the serious problem in their midst of non-compliance with
judicial orders.   And they must get the problem solved.

If they do not, it will be that much more difficult later, in
other cases, to characterize any violations of no-transfer
injunctions as they have been described in this case.   As
mistakes.   As matters of simple inadvertence.   Not as willful
acts.

                         *    *    *

If there are future violations of judicial no-transfer
injunctions, the Court will become aware of them quickly.

The undersigned, for example, generally issues 2-3 no-transfer
injunctions each week.   And DoJ leaders have represented that
they will "self-report" noncompliance with Court orders.   See
Feb. 13, 2026 Letter at 1.[31]

The Court intends to ensure that this representation sticks.
Going forward, in each new case the Court will order "self-
report[ing]" for any violation of a Court order in that case.

                         *    *    *

As alluded to above, if there are future violations of a no-
transfer injunction, even after the declarations requirement has
been put in place, the ball will start off at a different place.
Further up the field, closer to the "last resort" of possible
criminal contempt proceeding.   That is a thing to avoid.   And it

---

[31]   See also Declaration of John F. Basiak Jr. ¶ 7(b), Moncada De
La Hoz, No. 26-01016 (ECF 9) (swearing that the Civil Division
has "emphasiz[ed] that in the event of a violation of a Court
order, we must immediate[ly] disclose to . . . the Court that
violation").

is a thing that can, still, be avoided.  By turning the page, and complying fully with the Court's no-transfer orders.[32]

\*      \*      \*

On this 2nd day of March, 2026.

Michael E. Farbiarz, U.S.D.J.

---

[32]  A final note.  The Petitioner's custody here is unlawful because the law requires that he be given a bail hearing before an immigration judge --- but he has not had one.  See Y.Z., 2025 WL 3564652, at \*1-3.  Accordingly, the Court ordered an immigration-court hearing nearly a month ago.  See Feb. 5, 2026 Text Order (ECF 13).  But the Petitioner has repeatedly declined the hearing, see Feb. 6, 2026 Letter (ECF 15); Feb. 9, 2026 Letter (ECF 20), apparently hoping that the Court will order that he be released.  But the illegality of the Petitioner's detention-without-a-hearing would be undone by an immigration-court hearing.  And once the illegality of his detention is undone, the habeas statute under which the Petitioner has sued does not give him any basis for relief.  The Petitioner's remedy here is the one from February 5 --- a bail hearing before the immigration court.